# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Seizure of

$145,130.00 U.S. Currency

Case No.   4:16MJ1080 JMB

**FILED**

MAR - 3 2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT

I, Ryan Lawyer, being duly sworn depose and say:

I am a Special Agent with the Drug Enforcement Administration, and have reason to believe that in the Eastern District of Missouri, there is now certain property namely

$145,130.00 U.S. Currency,

which is

subject to forfeiture under Title 21, United States Code, Sections 853 & 881(a), and therefore, is subject to seizure under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Sections 853(e)&(f) and 881(b) concerning violations of Title 21, United States Code, Section 841 and 846.

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

Continued on the attached sheet and made a part hereof.     X  Yes ___ No

_____
Signature of Affiant, Special Agent Ryan Lawyer

Sworn to before me, and subscribed in my presence

March 3, 2016
**Date and Time Issued**

at   St. Louis, Missouri
     **City and State**

John M. Bodenhausen, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

_____
**Signature of Judicial Officer**

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Ryan Lawyer, Special Agent with the Drug Enforcement Administration ("DEA") of the United States Department of Justice, being duly sworn, depose and state that:

### I.     INTRODUCTION

1. I am a Special Agent with the United States Department of Justice Drug Enforcement Administration and have been so appointed since 2004. During my tenure, I have conducted or assisted in numerous investigations of criminal violations of the Controlled Substances Act and Federal Drug Trafficking Statutes. These investigations focused on individuals who have distributed, manufactured, or derived assets or income from illegal sources, specifically from the unlawful distribution of cocaine, heroin, methamphetamine, and marijuana.

2. I have been employed as a Special Agent with the Drug Enforcement Administration for the past 11 years. In addition to my experience in conducting criminal investigations, I have received training from the Drug Enforcement Administration. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

3. I am currently part of an investigative team, composed of experienced narcotics investigators, that are involved in narcotics interdiction investigations covering airport, bus and train, parcel packages, and highway couriers that are operating in violation of Title 21 United States Code, Sections 841(a)(1) and 846.

1

4.     This affidavit is submitted in support of an application for the issuance of a seizure warrant for the items listed and detailed in Section II of this affidavit - all within the Eastern District of Missouri. As an experienced and trained narcotics investigator, it is your Affiant's opinion that probable cause exists to believe that the U.S. currency seized in this investigation was proceeds resulting from violations of Title 21, United States Code, 841(a)(1) and 846, involving the distribution and conspiracy to distribute controlled substances.

5.     The statements provided herein are based in part on information provided by DEA personnel, including but not limited to Special Agents and Task Force Officers, and your Affiant's own experience and background as a DEA Special Agent. The information included in this affidavit is based on your Affiant's personal knowledge and the investigative sources of your Affiant and other members of the investigative team.

6.     Since this affidavit is being submitted strictly in an effort to obtain a seizure warrant for the listed item(s), your Affiant has set forth only the facts that your Affiant believes are the essential framework for the issuance of the seizure warrant for the listed item(s).

## II.     ITEM(S) FOR WHICH THE SEIZURE WARRANT IS REQUESTED

$145,130.00 U.S. Currency

### Interdiction Stop and investigation on January 14, 2016

7.     On January 14, 2016, at approximately 2:17 p.m., Phelps County Sheriff's Department Sergeant Carmello Crivello also a deputized DEA Task Force Officer (TFO) was conducting patrol on Interstate 44 in Phelps County, Missouri pursuant to an OCDETF Highway Interdiction Initiative. TFO Crivello observed a grey Dodge Charger near mile marker 172 traveling

2

westbound over the posted limit. TFO Crivello also could not read the rear license plate due to it being covered with dirt. TFO Crivello conducted a traffic stop of the vehicle and learned the vehicle was bearing Massachusetts registration1FW291.

8. TFO Crivello approached the vehicle and contacted the driver identified as Harris BROWN and learned that the vehicle was rented by BROWN from Avis Rent a Car. TFO Crivello informed BROWN of the speeding violation and BROWN admitted that he was traveling 9 miles over the speed limit. TFO Crivello told BROWN that the license plate was also in violation of the law because it was obscured and not visible. TFO Crivello asked BROWN to follow him back to the patrol vehicle for routine record checks and Brown complied. The record check identified BROWN as having a criminal history. TFO Crivello asked his purpose for travel. BROWN calmly stated he was a financier in Beverly Hills, California. BROWN stated he flew with his son to Columbus, Ohio and was returning home. TFO Crivello asked BROWN why he chose to drive instead of fly. BROWN stated he liked the scenery. TFO Crivello told BROWN he was an interdiction officer looking for couriers transporting drugs or large quantities of currency. TFO Crivello immediately observed BROWN's breathing become shallow and he appeared to be very nervous. BROWN placed his hands behind his head and stretched. TFO Crivello told BROWN that it was common for him to encounter drugs coming from the west coast and proceeds of drug trafficking returning back to the west coast. TFO Crivello observed that BROWN began to move around in the seat nervously and did not talk. TFO Crivello then asked BROWN if he was transporting anything illegal to include a large amount of currency. BROWN replied no. TFO Crivello observed that BROWN's voice cracked and he appeared more nervous. TFO Crivello asked BROWN for consent to search his vehicle and BROWN replied yes.

3

9.  At that time, TFO Crivello and BROWN returned to BROWN's vehicle. TFO Crivello opened the trunk and observed a tan suitcase. TFO Crivello asked BROWN if the suitcase belonged to him and he replied yes. TFO Crivello opened the suitcase and found several manila color envelopes. TFO Crivello asked BROWN if the envelopes contained cash and BROWN replied yes. TFO Crivello asked BROWN how much cash was in the envelopes and BROWN replied he was told it was forty thousand. TFO Crivello partially cut open one of the envelopes and observed a clear plastic vacuum sealed bag containing a bundle of U.S. Currency wrapped with suspected carbon paper. TFO Crivello partially cut open a second envelope and observed it also contained U.S. Currency wrapped in carbon paper.

10. DEA St. Louis Group Supervisor (GS) Markhart and TFO John Gillen responded to meet TFO Crivello and BROWN. TFO Crivello continued to talk to BROWN about the incident and informed BROWN that he was not under arrest. TFO Crivello told BROWN that based on his experience, he believed the envelopes contained more than $100,000. BROWN said he was told it was $40,000. BROWN said he was scared about his safety and family. TFO Crivello told BROWN that they would talk more about it at the sheriff's department and he would be given a receipt for the seized currency.

11. Upon arriving at the sheriff's department, TFO Crivello completed a thorough search of the vehicle and removed five (5) envelopes from the suitcase which each contained US Currency. TFO Crivello seized the undetermined quantity of U.S. Currency as suspected drug related proceeds.

12. Afterwards, TFO Gillen, TFO Crivello, and GS Markhart conducted an interview of BROWN. TFO Gillen and GS Markhart identified themselves as members of the Drug

4

Enforcement Administration. TFO Gillen advised BROWN of his Miranda rights and he signed a waiver of rights form. BROWN told investigators while at a New Year's Eve party in Los Angeles, California he was talking to a friend who was involved with the distribution of marijuana. BROWN did not want to identify his friend, but said they have known each other for a long time and his friend got into some trouble with the law about 8 years ago. BROWN's friend told him that he could earn some easy money working with Rolo who was involved with marijuana dispensaries. BROWN was then introduced to Rolo at the party. Rolo told BROWN they would talk later. A few days later, BROWN got a telephone call from Rolo and they met at the Republic of Pie Restaurant on Magnolia Blvd., in North Hollywood, California. During the meeting, Rolo told BROWN he would pay him $2,000 to travel to Cleveland, Ohio to pick up money and bring it back to California. Rolo told BROWN that he better not steal the money and if the police stopped him that he had to return with a receipt. Rolo told BROWN that he would contact him in a few days with more information. On January 11, 2016, BROWN met with Rolo again at the same restaurant. BROWN said Rolo instructed him to fly from Los Angeles, California to Cleveland, Ohio on Wednesday and rent a car at the airport. While at the car rental store, someone would contact him and give him the money to drive back to California. BROWN said he then purchased a one-way airline ticket from LAX to Cleveland and provided the flight information to Rolo. BROWN said on January 13, 2016, he flew to Cleveland, Ohio, arriving at about 6:11 p.m. and went to the Avis Rent-A-Car counter. While renting a car, an unknown black male approached him and asked if he was Harris. BROWN said yes and the unknown black male tried to give him a backpack. BROWN stated he told the unknown black male to go outside where it was more private. BROWN said he rented the car and they both went outside to the vehicle. BROWN stated he opened the backpack, removed five (5) envelopes, placed them

5

inside his suitcase, and put it in the trunk of the rental car. BROWN said he then returned the backpack to the unknown black male and they left separately. BROWN said he drove from the airport to St. Louis, Missouri where he checked into the Omni Hotel on January 14, 2016. At approximately 12:00 p.m., BROWN woke up, checked out of the hotel, and continued traveling via Interstate 44 towards California when he was stopped by TFO Crivello. BROWN said he was instructed to contact his friend when he was close to Los Angeles to meet and transfer the money.

13. TFO Gillen asked BROWN if he had made any other trips to deliver drugs or pick up money and he said he had not. TFO Crivello as witnessed by TFO Gillen gave BROWN a DEA-12 receipt for the seizure of an undetermined quantity of U.S. Currency. Subsequently thereafter, BROWN left the sheriff's department in the rental car to continue his trip back to Los Angeles, California.

14. On January 15, 2016, Phelps County Sheriff's Department Detective Boshoff and Detective Scott Jarrett removed the undetermined amount of US Currency from evidence and took it to the Citizens Bank in Rolla, Missouri for an official count. Bank personnel determined the official count to be $145,130.00 consisting of the following denominations: 260 x $100 bills; 181 x $50 bills; and 5,463 x $20 bills; 44 x $10; 74 x $5; 10 x $1 totaling $145,130.00 which was deposited into the Phelps County Sheriff's Department Asset Seizure Account pending the issuance of a state transfer order.

15. On March 1, 2016, the Circuit Court of Phelps County Missouri issued a Court Order to turn the currency over the Drug Enforcement Administration for federal forfeiture. A seizure

6

warrant is necessary to transfer the subject currency into federal custody to pursue federal forfeiture.

## VIII. SUMMARY

16.     Based on the foregoing facts and circumstances, your Affiant believes that BROWN was responsible for the illegal transportation of United States currency and that the currency is proceeds of a violation of Title 21, United States Codes, Section 841(a)(1) and 846, therefore subject to forfeiture under Title 21, United States Code, Section 853.